**In the Matter of K.D.S.**

**No. 01–89–01184–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 25, 1991.

John W. Williford, Huntsville, for appellant.

Mary Klapperich, Asst. Crim. Dist. Atty., for appellee.

Before SAM BASS, HUGHES and DUNN, JJ.

## OPINION

DUNN, Justice.

Appellant, K.D.S., appeals the order of the juvenile court waiving jurisdiction of the cause against her. The juvenile court transferred the cause to the criminal district court where appellant would be tried, as an adult, for murder.

In her sole point of error, appellant contends that there is insufficient evidence to support the juvenile court's order waiving jurisdiction and transferring the cause to the criminal district court. Specifically, appellant contends that the juvenile court's findings that the alleged offense was committed in an aggressive manner, that appellant was of sufficient sophistication and maturity to be tried as an adult, and that the procedures and facilities available to the juvenile court were unlikely to adequately protect the public and reasonably rehabilitate appellant were not supported by sufficient evidence.

Jeffrey Rogers testified that on August 4, 1989, about 1:30 a.m., a rock was thrown through his window. He ran out of his house to find the person who threw the rock. He stopped between the street and his yard and saw Winfred Earl Jefferson who said he saw who threw the rock. Jefferson then walked past Rogers. Rogers, hearing a gunshot, turned around and saw Jefferson standing near appellant. Jefferson said appellant shot him, and Rogers saw appellant holding a gun. After the shooting, appellant ran away. Jefferson later died as a result of the gunshot wound.

Jean Brown, a detective with the Huntsville Police Department, testified that she investigated the murder of Jefferson. She was contacted by the Walker County Sheriff's Department who stated they were picking up a suspect in the murder. When she arrived at the Walker County jail, Detective Curtis Dickey was there with appellant. Appellant told them she was 15 years old. Dickey told Brown that appellant had told him she had shot someone who, she had heard, had died. Dickey also told Brown that appellant had given him the murder weapon.

Ronald J. Massey, a psychologist, testified that he examined appellant at the request of the Walker County Probation Department. He determined that appellant had a full scale I.Q. of 70, just above the retarded range, but he estimated her native intelligence as between an I.Q. of 75 and 85, with an overall maturity of a nine to 11-year old child. Massey felt that appellant could assist her attorney with her defense and that she could understand the proceedings against her.

Because appellant had lived on the street for several years, Massey stated that she had been exposed to a lot of violence. As a result, she became desensitized to violence. While Massey felt appellant knew right from wrong on an intellectual level, he felt that, because of her exposure to violence, she could not necessarily differentiate right from wrong on an emotional level. In Massey's opinion, appellant used violence to solve problems. Massey felt appellant was a violent person.

Appellant told Massey that she got into a fight with Jefferson; he got in her face, she pushed him away, he pushed her back, and she shot him. She told Massey that she was afraid, but did not indicate that she had made any attempt to escape the fight with Jefferson. Massey claimed that appellant did not seem to have a sense of remorse for what she had done.

Massey determined that, to function in society, appellant needed to be placed in a secure facility where she could not run away. In addition, she needed to be required to participate in socialization activities. For the major rehabilitative work to be done, appellant needed to be in the facility for at least two and a half to three years. Massey felt that if appellant were released, she would commit another violent act. Since Massey was unfamiliar with the programs and facilities available at the Texas Youth Council and the Texas Department of Criminal Justice, he did not offer an opinion as to where appellant should be placed.

Leroy Wilkinson, a juvenile probation officer, testified that he investigated the background of appellant. He stated that he was unable to contact appellant's father, but did talk to her mother and her maternal grandmother. Wilkinson determined that on September 26, 1988, appellant was living with her father when they got into a fight, and she disappeared. No one in her family knew where she was until she went to her grandmother's house on July 24, 1989.

Wilkinson stated that appellant was in the sixth grade when she dropped out of school in April 1987. While she was in school, appellant had a poor attendance record, and during the last semester appellant was enrolled in school, she only passed one of six classes. In addition, her school records indicated that she had been suspended or expelled at least three times and had several referrals for abusive language, fighting, and other aggressive behavior.

Wilkinson discovered that appellant had three documented runaway complaints in Harris County and a terroristic threat complaint pending in Waller County.

Wilkinson asserted that if a juvenile is referred to the Texas Youth Commission after being convicted of a violent crime, she would be placed in the Giddings State School for at least one year. The school is a maximum security unit. The juvenile is not free to go, but can eventually work her way up in the system, allowing her to work in the community and return to the school at night. He stated that he was unsure whether the Texas Youth Commission could help appellant solve all of her problems.

Aubrey Gene Perkins, a counselor with the Montgomery County juvenile detention center, testified that he worked with appellant during the month and a half she was at the detention center. He evaluated appellant's behavior as below average to good. He explained that appellant was likable, but on occasions when she did not want to participate, while appellant did not become disruptive, she did refuse to come out of her room.

Perkins testified that he overheard a conversation between appellant and another juvenile at the center. Appellant and the other juvenile were discussing firearms. Perkins claimed that appellant said she would shoot the district attorney if appellant was sentenced to prison. When Perkins confronted appellant, appellant's voice became very loud and she became defensive; appellant denied that she made the remark. Appellant then made an offensive remark to Perkins. Perkins was surprised by appellant's behavior since appellant had never before been angry at him.

The juvenile court entered an order waiving its jurisdiction over the cause. The juvenile court transferred appellant to the criminal district court where she would be tried as an adult. The juvenile court found that appellant was 15 years old when she allegedly committed the offense, and the offense would be a felony if committed by an adult. The juvenile court also found that the offense was committed against a person in an aggressive manner. The juvenile court found that a grand jury may be expected to return an indictment against appellant for the alleged offense.

In addition, the juvenile court found that appellant was of sufficient sophistication and maturity to be tried as an adult; specifically, she was of sufficient sophistication and maturity to aid her attorney in her defense. The juvenile court found that because of the history of appellant and the seriousness of the offense, procedures and facilities available to the juvenile court were unlikely to adequately protect the

public and rehabilitate appellant. The juvenile court found that it was contrary to the best interests of the public for the juvenile court to retain jurisdiction; the juvenile court found that the welfare of the community required criminal proceedings.

The juvenile court listed several reasons for its order waiving jurisdiction, including a firearm being used in the commission of the alleged murder, the seriousness of the offense, and appellant's extensive background of prior disregard for authority.

▮▮ In determining whether the evidence is sufficient to support a finding, an appellate court should consider and weigh all evidence. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Only if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust should an appellate court set the finding aside. *Cain,* 709 S.W.2d at 176; *Glockzin,* 760 S.W.2d at 666.

A juvenile court has discretion to waive its jurisdiction and transfer a criminal proceeding involving a child to the criminal district court if the child allegedly committed a felony; the child was at least 15 years old when she allegedly committed the offense; no adjudication hearing has been conducted concerning the offense; and "after full investigation and hearing[,] the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense or the background of the child[,] the welfare of the community requires criminal proceedings." TEX.FAM.CODE ANN. § 54.02(a) (Vernon Supp.1991).

In making a decision on waiver of jurisdiction, the juvenile court is to consider, among other things:

(1) whether the alleged offense was against a person or against property, with weight in favor of transfer for offenses against a person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) whether the procedures, services, and facilities currently available to the juvenile court are likely to adequately protect the public and rehabilitate the child.

TEX.FAM.CODE ANN. § 54.02(f) (Vernon 1986).

▮▮ Initially, we note that while the juvenile court is required to consider all six factors listed in section 54.02(f), it need not find each factor is established by the evidence. *C____ W____ v. State,* 738 S.W.2d 72, 75 (Tex.App.—Dallas 1987, no writ); *Moore v. State,* 713 S.W.2d 766, 769 (Tex.App.—Houston [14th Dist.] 1986, no writ); *P.G. v. State,* 616 S.W.2d 635, 639 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). Appellant concedes that the juvenile court's findings that the alleged offense was committed against a person and that the grand jury may be expected to return an indictment for murder were correct.

▮▮ We find the juvenile court's finding that appellant committed the alleged offense in an aggressive manner was supported by sufficient evidence. Appellant shot Jefferson and ran away. Whether Jefferson was in appellant's face or pushed her does not obviate the aggressive nature of appellant's act. Consequently, we find the juvenile court's finding that appellant committed the alleged offense in an aggressive manner was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

▮▮ We also find the juvenile court's finding that appellant was of sufficient sophistication and maturity to be tried as an adult was supported by sufficient evidence. While Massey claimed appellant's I.Q. was just above the retarded range, he also placed her native intelligence at a higher level. Moreover, I.Q. is only one element to be used to determine whether a juvenile is of sufficient sophistication and maturity

to be tried as an adult. *L.W.F. v. State*, 559 S.W.2d 428, 431 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.). In addition, although Massey stated appellant had the maturity of a nine to 11–year old child, he also stated that she was capable of understanding the proceedings against her and assisting her attorney in her defense. *See In re E.D.N.*, 635 S.W.2d 798, 801 (Tex. App.—Corpus Christi 1982, no writ) (juvenile court's finding concerning juvenile's sophistication and maturity was supported by sufficient evidence where, among other things, record contained no evidence juvenile would be unable to assist his attorney in his defense); *In re S.E.C.*, 605 S.W.2d 955, 958 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ) (requirement that court consider juvenile's maturity and sophistication refers, among other things, to the ability of the child to assist in his defense). Moreover, Massey testified that appellant was intellectually capable of distinguishing right from wrong. *See In re E.D.N.*, 635 S.W.2d at 801 (purpose of inquiry into mental ability and maturity of juvenile is to determine whether he knows his acts were right or wrong); *In re Q.D.*, 600 S.W.2d 392, 395 (Tex.Civ.App.—Fort Worth 1980, no writ) (fact that juvenile knew difference between right and wrong supported juvenile court's finding that juvenile was sufficiently sophisticated and mature to stand trial as an adult). Therefore, we find the juvenile court's finding that appellant was of sufficient sophistication and maturity to be tried as an adult was not so against the great weight and preponderance of the evidence as to be manifestly unjust. While a different conclusion might be reached, this Court will not substitute its judgment for that of the juvenile court. *Casiano v. State*, 687 S.W.2d 447, 449 (Tex.App.—Houston [14th Dist.] 1985, no writ); *In re I_____ L_____ v. State*, 577 S.W.2d 375, 377 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.).

■ Finally, we find the trial court's finding that the procedures and facilities available to the juvenile court were unlikely to adequately protect the public and rehabilitate appellant was supported by sufficient evidence. Appellant allegedly committed a very serious offense; she shot and killed someone. Appellant had been involved with juvenile authorities on at least four previous occasions, three for runaway complaints and one for a terroristic threat complaint. Appellant also had a history of poor attendance, failing grades, and abusive and aggressive behavior at school. Furthermore, Massey testified that appellant was a violent person who used violence to solve problems and could be expected to commit another violent offense if released. *See Moore v. State*, 713 S.W.2d at 769–70 (testimony that juvenile was likely to act out again supported juvenile court's finding that adequate protection of the public required a criminal proceeding). Additionally, while she was in the custody of juvenile authorities, appellant threatened to shoot the district attorney. Neither Massey nor Wilkinson were able to conclude that the facilities available to the juvenile court would rehabilitate appellant. Thus, we find the juvenile court's finding that the procedures and facilities available to the juvenile court were unlikely to adequately protect the public and rehabilitate appellant was not so against the great weight and preponderance of the evidence as to be manifestly unjust.

We find sufficient evidence supported the juvenile court's order waiving jurisdiction and transferring the cause to the criminal district court. We overrule appellant's sole point of error.

We affirm the order of the juvenile court.