In the Matter of M.A., a Juvenile.

No. 04–96–00094–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 6, 1996.

Rehearing Overruled Nov. 27, 1996.

Stephanie L. Stevens, John J. Jordan, San Antonio, for appellant.

Alan E. Battaglia, Assistant Criminal District Attorney, San Antonio, for appellee.

Before LÓPEZ, RICKHOFF and STONE, JJ.

## OPINION

LÓPEZ, Justice.

This appeal is a challenge to the juvenile court's decision to certify appellant to stand trial as an adult. Appellant is accused of the death of a four-year-old girl, resulting from a drive-by shooting. In seven points of error, appellant challenges the court's findings on probable cause that he committed the offense and sufficiency of the evidence to waive jurisdiction and transfer him to the district court. He asserts that Penal Code Section 19.03(a)(8), capital murder of a child under six years of age, requires a specific finding that the accused had knowledge of the age of the victim. We disagree based on the plain reading of the statute and affirm the trial court's decision.

Appellant and his family were involved in an ongoing feud with the Ramos family stemming from appellant's brothers' refusal to join a gang. Prior to the problems with the Ramos family, the record indicates that appellant was attending school and had not had problems with delinquent activity. Several altercations occurred between appellant's older brothers and two Ramos brothers after

they refused to become gang members. Eventually appellant's niece was shot during a drive-by-shooting, for which the two Ramos brothers were convicted. Appellant's family was forced to move out of San Antonio due to constant threats from the Ramos family.

On the evening of the offense at issue, the victim was visiting with the Ramos family when shots were fired from the street. The four-year-old child was killed as she was sitting in the living room of the home watching television. Appellant eventually admitted that he committed the shooting.

▮ In his first point of error, appellant asserts that the trial court's finding of probable cause that appellant violated Texas Penal Code Section 19.03 (capital murder) was unconstitutional. He contends that because knowledge of the victim's age is a necessary element of the offense, a finding of that knowledge was necessary to certify appellant for capital murder.

The State argues that this point was waived because it was never brought to the trial court's attention. TEX.R.APP. P. 52(a); *J.R.W. v. State,* 879 S.W.2d 254, 258 (Tex. App.—Dallas 1994, no writ). The record includes argument by appellant's counsel that knowledge of the victim's age is a necessary element of the offense and that certifying appellant for capital murder without a finding that he knew the age of the victim would be inappropriate. Appellant did not, however, assert any constitutional grounds to support this argument.

Although there is merit to the State's argument that this point of error was waived, we have determined that the point should be overruled on the merits, as discussed below.

The following Penal Code sections apply:

*Section 19.03:*

(a) A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and: . . .

(8) the person murders an individual under six years of age.

*Section 19.02(b)(1):*

(b) A person commits an offense if he:

(1) intentionally and knowingly causes the death of an individual; . . .

Under Family Code Section 54.02(a)(3), the juvenile court may waive its exclusive original jurisdiction and transfer a child to the district court if:

after a full investigation and a hearing, the juvenile court determines that there is probable cause to believe that the child before the court committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings.

TEX. FAM.CODE ANN. § 54.02(f) (Vernon 1996); *see also R.P. v. State,* 759 S.W.2d 181, 182 (Tex.App.—San Antonio 1988, no writ). Probable cause has been further defined as "sufficient facts and circumstances to warrant a prudent man to believe that the suspect had committed an offense." *In re J.P.O.,* 904 S.W.2d 695, 700 (Tex.App.—Corpus Christi 1995, writ denied); *In re D.W.L.,* 828 S.W.2d 520, 524 (Tex.App.—Houston [14th Dist.] 1992, no writ); *see Gerstein v. Pugh,* 420 U.S. 103, 112, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975).

▮ In order to allow for the waiver of jurisdiction, the juvenile court must have probable cause to believe that appellant committed the actual offense or offenses alleged. *In re R.A.G.,* 866 S.W.2d 199, 199 (Tex.1993); *In re R.P.,* 759 S.W.2d at 182.

Appellant argues that because there was no way he could have known that the victim was in the home, there was no possibility that he "knowingly" committed capital murder. Therefore, there was no probable cause that he committed the offense alleged in the petition.

Appellant admits that this is a novel issue in Texas. He also asserts that the grammatical construction of Section 19.03 can only be read to require that an accused knew the age of the victim. *Cf. United States v. X–Citement Video, Inc.,* 513 U.S. 64, ——, 115 S.Ct. 464, 467, 130 L.Ed.2d 372 (1994) (requiring defendants distributing videotapes "knew" sexual tapes depicted minors). Appellant suggests that we look at the legislative history wherein the testimony indicates an intent to require knowledge. The offense was included in capital murder due to an alarming

number of children's deaths caused by abuse. Hearings on Tex. S.B. 13 Before Senate Criminal Jurisprudence Committee, 73rd Leg., R.S. (Mar. 9, 1993).

The Eastland Court of Appeals has recently held that "knowledge of the victim's age is not an element of the offense under Section 19.03(a)(8). Looking at the plain language of this statute, there is nothing to indicate that the accused must have known that his victim was younger than six years old." *McCollister v. State*, 933 S.W.2d 170, 172 (Tex.App.—Eastland 1996, no pet. h.).

The State asserts that a literal reading of the statute does not require that the accused know the age of the child, therefore, no such finding is required. *Cf. McFarland v. State*, 928 S.W.2d 482, 498 (Tex.Crim.App.1996) (preferring to look to literal language of statute when possible). They also point out that Section 19.03(a)(8) is drafted much differently than Section 19.03(a)(1) where plain language is included that an accused must have known of the officer's status. *Compare* TEX. PENAL CODE ANN. § 19.03(a)(8), *with,* TEX. PENAL CODE ANN. § 19.03(a)(1). *See also* TEX. PENAL CODE ANN. §§ 22.021, 22.04(c)(1) (other offenses against children with requirement that accused know victim was child).

The State further argues that similar comparisons, such as knowledge that sexual actors are minors, should be set apart because without the age factor, the actions are not criminal. Here, the underlying act was still murder. *Cf. United States v. Feola*, 420 U.S. 671, 674–87, 95 S.Ct. 1255, 1258–65, 43 L.Ed.2d 541 (1975) (no requirement that accused know status of federal officer to heighten assault charge because underlying conduct is offense).

■ In construing a criminal statute, we ordinarily give effect to the plain meaning of the language since it should have been plain to the legislators who enacted it. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991). Only if the statute is ambiguous or could lead to absurd results does the court resort to outside information such as legislative history. *Id.* at 785.

We find that the State's interpretation of the plain language of the statute is persuasive. The action of committing the murder requires intentional and knowing conduct, but there is no additional mens rea requirement attached to the age of the victim. In drafting the statute, the legislature could easily have worded it similarly to 19.03(a)(1), with a built-in knowledge element. Because that language was left out, we cannot say that any such element was required, nor do we find any language indicating an ambiguity.[1]

■ In setting the standards for a death penalty offense, the states must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). This is required in order to "minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia*, 428 U.S. 153, 189, 96 S.Ct. 2909, 2932, 49 L.Ed.2d 859 (1976). The offense of capital murder must be narrowly defined to "particularly brutal offenses," with specifically aggravating circumstances. *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976).

We differentiate the cases that appellant has directed us to such as *X–Citement Video, Inc.*, on the basis that the underlying conduct would not be criminal in those type of cases

---

1. We note that after reviewing the legislative history, it is clear that 19.03(a)(8) was enacted in response to an outcry over deaths of children under the age of six at the hands of their caregivers. Although there is brief mention of whether the prosecution would be required to show that the accused had knowledge of the victim's age, no definitive stance was taken on that issue. Hearings on Tex. S.B. 13 Before Senate Criminal Jurisprudence Committee, 73rd Leg. R.S. (Mar. 9, 1993) (Statement of Senator Buster Brown).

We recognize that the Legislature may not have considered this type of fact scenario when enacting the statute, but we are not at liberty to insert additional elements into the plain language based on our interpretation of the legislative history. *Boykin,* 818 S.W.2d at 785; *Coit v. State,* 808 S.W.2d 473, 475 (Tex.Crim.App.1991). We certainly invite the Texas Legislature to clarify the statute if they did not intend for Section 19.03(a)(8) to apply to the fact scenario in this case.

without the age element. There is a culpability requirement in the capital murder statute because an accused must have "knowingly" committed the murder.

We find that the added category of a victim under six in capital murder cases would not be considered arbitrary or capricious under *Gregg* or *Jurek*. The category is narrowly defined to address the murder of a young child, vulnerable to harm by adults, that may often go unnoticed due to possibly limited contact with outside help. Although the legislative history does indicate a need to protect children from domestic abuse situations, there is nothing specifically limiting the application of the statute to only those situations. Appellant's first point of error is overruled.

Appellant asserts, in his second and third points of error, that the trial court abused its discretion in waiving jurisdiction because the evidence to support the finding of probable cause was legally and factually insufficient. Appellant asserts that there was no evidence to establish probable cause because he did not know the young child was in the house.

Because we have determined that knowledge of the age of the child is not a required element of the offense, we need not address these points of error. It was not necessary for the State to present evidence that appellant was aware of the victim's age or that a child under six was present in the house. Points of error two and three are overruled.

■ Appellant claims, in his fourth and fifth points of error, that the evidence was legally and factually insufficient to support the trial court's findings under Family Code Section 54.02(f). Appellant contends that there is no evidence to support any of the factors except the type of offense committed. Specifically, he points us to the trial court's actions in scratching out "young person is sophisticated and mature enough to be transferred into the criminal justice system," and writing in "is a typical 16 year old." The court also scratched out "the background of the child" in her findings.

The State argues that the evidence supports the findings that the offense was against a person, the offense was premeditated and aggressive, protection of society was a concern, and an indictment would likely be returned.

Section 54.02(f) provides the following:

(f) In making the determination required by subsection (a) of this section [whether to transfer],the court shall consider, among other matters:

(1) whether the alleged offense was against a person or property, with greater weight in favor of transfer given to offenses against the person;

(2) whether the alleged offense was committed in an aggressive and premeditated manner;

(3) whether there is evidence on which a grand jury may be expected to return an indictment;

(4) the sophistication and maturity of the child;

(5) the record and previous history of the child; and

(6) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

Act of June 16, 1973, 63rd Leg., ch. 544, § 54.02(f), 1973 Tex. Gen. Laws 1477, *amended by*, Act of May 31, 1995, 74th Leg., ch. 262, § 34, 1995 Tex. Gen. Laws 2533 (codified at TEX. FAM.CODE ANN. § 54.02(f) (Vernon 1996)).

■ In reviewing the legal sufficiency of the evidence, we must consider whether, viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ In considering whether factually sufficient evidence exists to support the waiver of jurisdiction, appellant points us to the standard set forth in *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996). We must consider whether, after looking at all the evidence, the verdict is "against the great weight of the evidence presented at trial so

as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 135; *see also C.M. v. State*, 884 S.W.2d 562, 563 (Tex.App.—San Antonio 1994, no writ).

The trial court need not make an affirmative finding on all factors. *In re K.D.S.*, 808 S.W.2d 299, 302 (Tex.App.—Houston [1st Dist.] 1991, no writ); *J.D.P. v. State*, 609 S.W.2d 868, 870 (Tex.Civ.App.—Texarkana 1980, no writ). Texas courts have upheld the transfer with a specific finding on at least three of the factors. *In re J.S.*, 602 S.W.2d 585, 589 (Tex.Civ.App.—Amarillo 1980, no writ); *In re Q.D.*, 600 S.W.2d 392, 395 (Tex.Civ.App.—Fort Worth 1980, no writ). There is no requirement that the trial court specifically find the juvenile mature and sophisticated in order to support the waiver of jurisdiction. *In re D.L.N.*, 930 S.W.2d 253, 257 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.); *In re K.W.*, 865 S.W.2d 481, 482 (Tex.App.—Tyler 1993, no writ). The trial court's decision to waive jurisdiction is reviewed under an abuse of discretion standard. *In re K.B.H.*, 913 S.W.2d 684, 688 (Tex.App.—Texarkana 1995, no writ); *D.J.R. v. State*, 565 S.W.2d 392, 395 (Tex.Civ.App.—Ft. Worth 1978, no writ).

The evidence presented during the transfer hearing includes the following:

Melissa Ramirez, a juvenile probation officer for Bexar County, testified that she had completed a discretionary transfer hearing report. She spoke with appellant, as well as his parents, an official from the Texas Youth Commission (TYC) and someone from the adult probation department. She discovered that appellant, if found to have committed the offense, would likely be placed in the juvenile maximum security school. She found that he had behaved well in the detention center and had cooperated and been polite with her. Ms. Ramirez stated that his family was very supportive and visited him everyday.

Ms. Ramirez verified that appellant had no prior referrals to juvenile hall. She found him to be mature and able to understand the charges and proceedings against him. She did not feel that TYC was appropriate for appellant and recommended that his case be transferred to the district court. Ms. Ramirez was not satisfied with the amount of time appellant would stay at TYC. She thought he needed more time to be effectively rehabilitated.

Ms. Ramirez related that there was a feud between appellant and his older brother and two members of the Ramos family, in whose home the victim was visiting when she was shot. Appellant had done fine in school up until the Ramos brothers began harassing his brothers to join a gang. She testified that appellant's niece was killed in a drive-by-shooting, for which the two Ramos brothers were convicted.

Officer McCourt with the San Antonio Police Department testified that this drive-by-shooting was likely in retaliation for the previous shooting in which appellant's niece was killed. He explained that the victim in this case was not a resident of the home, but was a neighbor who visited the home infrequently. After the shooting, Mrs. Ramos identified appellant's two brothers as possible suspects. For that reason, appellant's father was stopped, with his wife and appellant in the car, on the night of the shooting. The officers found a .25 automatic gun. A witness from the scene, who earlier claimed the shots came from a '91 or '92 blue Honda Civic, could not identify the car or occupants, so they were released. Another witness saw a red vehicle, but the appellant's family has a blue Hyundai Excell.

Officer McCourt later went to question appellant's father and the father admitted that appellant told him that he used the gun to carry out the shooting. At that time, appellant and his father agreed to come in for questioning and both gave a statement. In appellant's statement, he admitted driving into San Antonio, taking his father's gun out of the trunk of the car, driving up and down the Ramos's street to check for police officers, and then firing four times into the house. Officer McCourt verified that the ballistics report on the gun came back matching the bullet recovered from the victim's body.

Dr. Jack Ferrell, a psychologist, testified for appellant. He stated that appellant's intelligence level is just above the retarded

range. He did not agree with the court appointed psychologist's report that found appellant mature and sophisticated. Dr. Ferrell found appellant immature, suffering from depression, and in a confused state. He indicated that appellant's school reports showed him performing adequately up until the time his niece was killed. The doctor felt that appellant had good family support and would be a good candidate for rehabilitation. Dr. Ferrell agreed that appellant understood his own actions, but stated that he might have trouble assisting counsel.

The psychologist's report from the court appointed doctor indicated that appellant functioned in the low-average range for a child his age, but understood both the charges against him and the purpose of the transfer hearing. Appellant admitted being expelled from school several times for fighting, using drugs and prior gang membership. Several standardized tests were performed. The doctor described appellant's attitude as negative and angry. He found appellant "mature and sophisticated in that he is culpable and responsible for his conduct and able to assist his attorney in his own defense."

A previous teacher of appellant's testified that appellant was an average student and was always polite. He had some trouble with English. One of appellant's neighbors testified that appellant's family was very "close-knit." She also knew of the rivalry with the Ramos family and stated that the Ramos sons were involved in gangs and drugs. Other neighbors and relatives testified that appellant was a courteous, normal kid and they would trust him with their children.

We find that the evidence presented at the hearing was sufficient, both legally and factually, to support the waiver of jurisdiction. Ms. Ramirez concluded in her report for the court that all factors except the record and history of the child had been satisfied. In appellant's statement he admitted driving into town from Castroville to commit the offense, from which the trial court could have determined the act was premeditated. Based on the evidence presented at the hearing, the trial court could have determined that the Grand Jury would return an indictment for capital murder. Although the trial

court did not find appellant mature and sophisticated, there is evidence in the record that indicates he understood his conduct and could assist in his defense. Due to the seriousness of the act, the trial court could also have determined that waiver was necessary to properly protect the public and assure appellant would have adequate time and opportunity for rehabilitation.

The trial court's consideration and findings under Section 54.02 were appropriate and justify the decision to waive juvenile jurisdiction and transfer appellant to the adult court system, even without an affirmative finding on each factor. *See In re D.L.N.*, 930 S.W.2d at 257; *In re K.W.*, 865 S.W.2d at 482; *In re K.D.S.*, 808 S.W.2d at 302. Therefore, the trial court did not abuse its discretion in waiving jurisdiction. *See In re K.B.H.*, 913 S.W.2d at 688. Points of error four and five are overruled.

■ In points of error six and seven, appellant asserts that the waiver of jurisdiction violated his due process rights under the United States and Texas Constitutions because appellant was not found to be "mature and sophisticated."

The State argues that this point was waived because it was never brought to the trial court's attention. TEX.R.APP. P. 52(a). The State also asserts that the waiver of jurisdiction can be upheld without this specific finding and regardless, there is sufficient evidence in the record to support a finding of maturity. *See In re S.E.C.*, 605 S.W.2d 955, 958 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ) (maturity and sophistication refer to juvenile's understanding of culpability and ability to assist in own defense).

The record reflects that appellant requested that the court not certify appellant due to his immaturity. Although appellant did not specifically question the decision based on constitutional grounds, we prefer to address the point of error on its merits, rather than dismiss it on technical grounds.

Appellant argues that because the finding on maturity was not made, his due process rights were violated in that he was not afforded the opportunity for rehabilitation through the juvenile system. He cites to *R.E.M. v. State*, 541 S.W.2d 841 (Tex.Civ.

App.—San Antonio 1976, writ ref'd n.r.e.), for the policy reasons to maintain certain youth in a juvenile program, even when the offense is serious. *See also In re C.M.,* 884 S.W.2d at 564. The United States Supreme Court, in *Kent v. United States,* 383 U.S. 541, 544, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966), recognized the need to provide "measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment."

As noted above, the Texas courts do not require a specific finding on each factor of Section 54.02. Therefore, we need only determine whether this accepted practice is constitutional. Appellant does not provide us with any case law, nor can we find any, that suggests the process set forth in Section 54.02 does not meet constitutional requirements. The Court in *Kent* found that the juvenile court must set forth its "reasons or considerations" for transfer, making it clear that a "full investigation" was made to support the decision. *Kent,* 383 U.S. at 561, 86 S.Ct. at 1057. Section 54.02 meets the criteria required in *Kent* by listing the factors the juvenile court should consider, along with others, and requiring a "diagnostic study, social evaluation, and full investigation of the child, his circumstances, and the circumstances of the alleged offense." Act of June 16, 1973, 63rd Leg., ch. 544, § 54.02(f), 1973 Tex. Gen. Laws 1477, *amended by,* Act of May 31, 1995, 74th Leg., ch. 262, § 34, 1995 Tex. Gen. Laws 2533 (codified at TEX. FAM. CODE ANN. § 54.02(f) (Vernon 1996)).

The juvenile court order verifies that the court considered the required factors and ordered the reports and investigation. Because these procedures were followed, we cannot say that there was any violation of appellant's due process rights under the United States Constitution, nor of appellant's due course of law rights under the Texas Constitution. Points of error six and seven are overruled. The order waiving the juvenile court's jurisdiction and transferring appellant to the criminal district court is affirmed.