TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00246-CR







John Eugenio Quinones, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 46,933, HONORABLE OLIVER KELLEY, JUDGE PRESIDING







 A jury convicted appellant John Eugenio Quinones for the offense of murder. See Tex.
Penal Code Ann. § 19.02 (West 1994). The jury assessed appellant's punishment at imprisonment for fifty
years. Appellant, a fifteen-year-old juvenile at the time the offense was committed, asserts that (1) the
evidence is factually insufficient to support the juvenile court's order waiving jurisdiction and transferring
his case to the district court for criminal proceedings, and (2) the trial court erred in allowing the State to
ask improper, prejudicial questions while cross-examining a probation officer. We will overrule appellant's
points of error and affirm the juvenile court's transfer order and affirm the district court's judgment.

 A juvenile court's order waiving its jurisdiction and transferring jurisdiction to the district
court for criminal proceedings may now be appealed "only in conjunction with the appeal of a conviction
of the offense for which the defendant was transferred to criminal court." Tex. Code Crim. Proc. Ann. art.
44.47(b) (West Supp. 1998); see Matter of D. D., 938 S.W.2d 172 (Tex. App.--Fort Worth 1996, no
writ).

 Appellant challenges the factual sufficiency of the evidence to support the juvenile court's
finding that a criminal proceeding was required "because of the seriousness of the offense, the background
of the juvenile-respondent, and the welfare of the community." Appellant argues that when all the evidence
in support of and contrary to the challenged finding is considered, the finding is so against the great weight
and preponderance of the evidence as to be manifestly erroneous or unjust.

 The State first contends that appellant waived his right to appeal the juvenile court's transfer
order when he pled guilty before the jury in district court with no plea agreement or recommendation from
the State. The State argues that it "is well settled under what is commonly known as the Helms rule, that
a voluntary and understanding plea of guilty or nolo contendere waives all non-jurisdictional defects that
occurred prior to entry of the plea." The State acknowledges that it was unable to locate direct authority
for its contention and suggests that this case presents a question of first impression involving a juvenile. We
decline consideration of the State's waiver contention because the Court of Criminal Appeals has now cast
doubt on the "well settled Helms rule" by granting a petition for discretionary review to "reconsider the
decision in Helms v. State, [484 S.W.2d 925 (Tex. Crim. App. 1975)]." See Young v. State, 940
S.W.2d 680 (Tex. App.--Beaumont 1996, pet. granted February 12, 1997). Alternatively, the State
urges that the evidence is factually sufficient to support the juvenile court's order. We agree.

 In reviewing a juvenile court's transfer order, "absent a showing of abuse of discretion we
will not disturb the juvenile court's findings." Matter of C. C., 930 S.W.2d 929, 933 (Tex. App.--Austin
1996, no writ). "When reviewing the factual sufficiency of the evidence supporting a finding, we must
consider and weigh all the evidence in support of and contrary to the findings." Id. "We will uphold the
contested findings unless we find the evidence is too weak to support them, or they are so against the
overwhelming weight of the evidence that they are manifestly unjust." Id.

 A juvenile court may waive its exclusive original jurisdiction and transfer a child to district
court for criminal proceedings if (1) the State alleges that the child committed a first degree felony, (2) the
offense alleged was committed by the child when fourteen years of age or older, (3) no court has conducted
an adjudication hearing concerning that offense, and (4) after a full investigation and hearing the juvenile
court finds probable cause to believe the child committed the alleged offense and that because of the
crime's seriousness or the child's background, the community's welfare requires criminal proceedings. See
Tex. Fam. Code Ann. § 54.02(a) (West 1996). In making the required determination, the court shall
consider among other matters: (1) whether the alleged offense was against a person or property, with
greater weight in favor of transfer given to offenses against the person, (2) the sophistication and maturity
of the child, (3) the record and previous history of the child, and (4) the prospects of adequate protection
of the public by use of procedures, services, and facilities currently available to the juvenile court. See id.
§ 54.02(f) (West 1996). 

 The record of the hearing in the juvenile court to determine whether appellant should be
retained in the juvenile system or be transferred to district court for trial shows a full investigation and
evaluation of appellant, the circumstances of the alleged offense and the available facilities for treatment and
rehabilitation in the juvenile system. Appellant's confession and other evidence revealed that appellant and
his mother, the murder victim, engaged in a heated argument triggered by a telephone call from one of
appellant's friends. After she answered the telephone, the victim accused appellant of being a gang
member. Appellant knocked his mother down. She crawled from the living room into the garage. 
Appellant took a butcher knife with an eight inch blade and followed his mother into the garage. He
stabbed her in the back twice, inflicting deep wounds that caused her death. Without summoning medical
aid for his mother, appellant washed the blood from the knife and left the house taking the knife with him. 
Some distance from the house, appellant threw the knife into a storm drain where it was later found by a
police officer. The victim told neighbors that appellant had wounded her. She died soon after being
admitted to a hospital.

 Although appellant's history in the juvenile system was not extensive, there was some
evidence appellant had engaged in criminal activities. He admitted his participation in the burglary of a
habitation and shop-lifting offenses. Appellant and his mother had had prior arguments and altercations;
on one occasion he had thrown a knife at her. The victim played bingo almost every night and slept until
late every morning. Appellant prepared his own food and washed his clothes. He thought his mother had
neglected him and favored his older sister. Appellant's father died before appellant was born, and appellant
had problems with the man with whom his mother was living. Appellant told a psychiatrist that "life in the
Detention Center was an improvement over his home life."

 Appellant finished the eighth grade and was attending ninth grade classes. In the current
school year, appellant had no disciplinary problems and his attendance and record in R.O.T.C. class were
good. School records showed his performance in mathematics was quite good but he had poor grades in
english, history, and reading.

 Richard Edmunds Coons, a psychiatrist, was appointed by the juvenile court judge to make
a psychiatric evaluation of appellant. Dr. Coons concluded that:


It is my opinion that although John Eugenio Quinones likely suffered from mild depression
at the time of his offense that level of depression would not exclude his responsibility for
the alleged delinquent conduct in that John Eugenio Quinones (a) did not lack substantial
capacity to appreciate the wrongfulness of his conduct, and (b) did not lack substantial
capacity to conform his conduct to the requirements of the law.


John Eugenio Quinones does not have a mental disease or defect which precludes his
fitness to proceed in this cause at this time in that he does not lack capacity to understand
the proceedings in the juvenile court and does not lack capacity to assist in his own
defense.


John Eugenio Quinones has an adequate understanding of the functions of judge, jury,
defense attorney, and prosecutor. He also has an understanding of the transfer procedure
and the potential outcome if he were tried as an adult.



 Frank Anthony Pugliese, a psychologist, also evaluated appellant. In a clinical interview,
Dr. Pugliese administered various intelligence and personality tests and found appellant's "score of 96 . .
. consistent with the average range of intellectual functioning." He also found appellant had "the
sophistication of an average fifteen-year-old" and concluded that:

John is a fifteen year old male who admitted to stabbing his mother twice during an
argument about his suspected involvement in a gang. The evaluation revealed a youngster
who had a very strained relationship with his mother for an extended period of time and
has felt neglected, abused, and ignored. He has felt much anger and resentment towards
his mother for her seemingly callous and insensitive attitude and claimed she often instigated
conflicts with him and prompted him to react in an oppositional manner. It is apparent
John is a very moody, volatile, and easily frustrated individual who feels very insecure and
inadequate and has many conflicts related to his acceptability to others. He is, nonetheless,
likely to be quite rebellious towards authority figures and lacks the impulse control essential
to prevent him from behaving in a self-defeating manner. Although there are no indications
John is actively suicidal at this time, he should be monitored closely throughout his stay at
the detention center and trial since he can be very unpredictable. I also suggest he obtain
some counseling to strengthen his coping skills and to help him confront the reality of what
he has done.


 Appellant offered extensive evidence concerning the Texas Youth Commission's Capital
Offender Treatment Program and evidence that he "qualified completely" to participate in the program. 
However, there was "no guarantee" that he would be accepted for that program.

 Katherine Mehl, a neighbor of the victim and appellant, testified that she had known
appellant for fourteen years. Appellant attended school with Mehl's grandson and had been in Mehl's
house many times. Mehl had also observed appellant at St. Joseph's Catholic Church where both families
attended. She would not have believed appellant capable of committing the crime of which he was
accused. Mehl believed appellant could be rehabilitated and testified she would be willing to take appellant
into her own home. She wanted appellant kept in the juvenile system and did not want him tried as an adult
criminal.

 David Curtis, appellant's godfather, a retired sergeant first class, testified that he and his
wife, Kim, had known appellant since his birth. Curtis felt "it would be better for society to salvage this
boy" and he wanted appellant placed in a youth program where he could be rehabilitated. Kim Curtis
testified that she thought appellant had lived in an unhappy household. She supported appellant's retention
in the juvenile system rather than his transfer to district court for a criminal trial.

 Father Charles Van Winkle was on sabbatical leave from St. Joseph's Catholic Church
and a letter he had written was admitted in evidence. Father Van Winkle had been the parish priest at St.
Joseph's for nine years. During that time, he knew the victim, appellant, and appellant's sister, as they were
parish members. Father Van Winkle alluded to appellant's growing up without a father and a conflict
between appellant and the man with whom his mother was living. Father Van Winkle said appellant's
mother had been strict with appellant's religious upbringing, but she herself had not followed the strict
principles she expected appellant to follow. Father Van Winkle said there were other "extenuating
circumstances" and "plead with the court that John be tried as the juvenile he is and not as an adult."

 We observe that "[t]he trial judge is free to decide to transfer the case due to the
seriousness of the crime, even if the background of the child suggests the opposite." C. M. v. State, 884
S.W.2d 562, 564 (Tex. App.--San Antonio 1994, no writ); see Matter of M. A., 935 S.W.2d 891, 895-97 (Tex. App.--San Antonio 1996, no writ). "[T]he trial court did not abuse its discretion by waiving
jurisdiction by finding the community's welfare required transfer because of the crimes seriousness alone." 
Matter of K. B. H., 913 S.W.2d 684, 688 (Tex. App.--Texarkana 1995, no writ). Appellant's
remorseless, vicious attack upon his mother causing her death was so serious as to justify the juvenile
court's transfer of jurisdiction. See Tex. Fam. Code Ann. § 54.02(a)(3) (West 1996). After reviewing
all of the evidence, we conclude that the juvenile court's order waiving jurisdiction and transferring the
cause to the district court for criminal proceedings is not so against the great weight and preponderance
of the evidence as to be manifestly erroneous or unjust. See Clewis v. State, 922 S.W.2d 126, 135 (Tex.
Crim. App. 1996). The evidence is factually sufficient to support the juvenile court's order. The juvenile
court did not abuse its discretion in ordering the transfer of the cause to the district court. Appellant's first
point of error is overruled.

 In his second point of error, appellant alleges that the "trial court erred in overruling defense
counsel's objections to questions suggesting that if defendant violated his probated sentence [community
supervision] and was sentenced to ten years, he would walk out of prison at age 21." Appellant had timely
filed a motion requesting that he be granted community supervision. The jury was appropriately charged,
but refused to grant appellant community supervision and assessed punishment of more than ten years
imprisonment, precluding community supervision. In his effort to gain the jury's consideration of community
supervision, appellant offered the testimony of Adult Probation Officer Edward R. Bonds. He testified:


Q. And isn't it also true that if Mr. Quinones was sent to Boys Town and he rebelled
against the authority and discipline or he didn't meet the terms or conditions of
what they demanded, he would be sent back as a violator of his probation.


 A. Yes, sir.


 Q. [Appellants attorney]: No other questions, Your Honor.


 RECROSS-EXAMINATION QUESTIONS BY [PROSECUTOR:]


 Q. And if that happened and he had been sentenced to the ten-year sentence, at the
age of 21, he would walk out of the prison -- arguably be eligible to walk out of
the prison a free --

 

 MR. LEE: Objection, Your Honor. That calls for speculation. We don't know
how the --


 THE COURT: Overruled.


 Q. Arguably, if he went up there and he rebelled and he was brought back here and
violated and the Court sentenced him to ten years in the penitentiary, at the age of
20 or 21, he would be eligible for parole and walking the streets with little to no
one over-looking his shoulder?


 A. It's my assumption that is true. However, I am not that detailed on juvenile
probation, sir.


 Q. All right. Well, this wouldn't be juvenile probation.


 A. I understand that. But I haven't got down to figuring it that close.

 


 "[I]t is well settled that an error in admission of evidence is cured where the same evidence
comes in without objection; defense counsel must object every time allegedly inadmissible evidence is
offered." Ethington v. State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); Hudson v. State, 675
S.W.2d 507, 511 (Tex. Crim. App. 1984); see Tex. R. Crim. Evid. 103(a)(l); Tex. R. App. P. 33.1;
Rodriguez v. State, 955 S.W.2d 171, 175 (Tex. App.--Amarillo 1997, no pet).

 Assuming without deciding that the asking of the alleged objectionable question was error,
the error was not preserved for appellate review. The objection was not specific. The question to which
counsel objected was not answered and when the question was restated there was no objection to the
question or the answer. Moreover, the result of a violation of the terms of probation, if probation were
granted, was first raised by appellant. Appellant's second point of error is overruled.

 The juvenile court's order transferring jurisdiction to the district court is affirmed. The
district court's judgment of conviction is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Kidd, B. A. Smith and Dally*

Affirmed

Filed: April 9, 1998

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



WP="BR1">
Q. And isn't it also true that if Mr. Quinones was sent to Boys Town and he rebelled
against the authority and discipline or he didn't meet the terms or conditions of
what they demanded, he would be sent back as a violator of his probation.


 A. Yes, sir.


 Q. [Appellants attorney]: No other questions, Your Honor.


 RECROSS-EXAMINATION QUESTIONS BY [PROSECUTOR:]


 Q. And if that happened and he had been sentenced to the ten-year sentence, at the
age of 21, he would walk out of the prison -- arguably be eligible to walk out of
the prison a free --

 

 MR. LEE: Objection, Your Honor. That calls for speculation. We don't know
how the --


 THE COURT: Overruled.


 Q. Arguably, if he went up there and he rebelled and he was brought back here and
violated and the Court sentenced him to ten years in the penitentiary, at the age of
20 or 21, he would be eligible for parole and walking the streets with little to no
one over-looking his shoulder?


 A. It's my assumption that is true. However, I am not that detailed on juvenile
probation, sir.


 Q. All right. Well, this wouldn't be juvenile probation.


 A. I understand that. But I haven't got down to figuring it that close.

 


 "[I]t is well settled that an error in