NUMBER 13-99-776-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

____________________________________________________________

MICHAEL JIMENEZ, Appellant,
v.


THE STATE OF TEXAS, Appellee.

____________________________________________________________


On appeal from the 130th District Court of Matagorda County, Texas.

____________________________________________________________


O P I N I O N


Before Justices Dorsey, Yañez, and Rodriguez

Opinion by Justice Yañez


After the juvenile court waived jurisdiction and transferred the case to criminal district court, (1) a jury convicted appellant,
Michael Jimenez, of capital murder. The trial court automatically sentenced him to life imprisonment. (2) Appellant raises
twenty-three points of error, contending generally that: 1) the trial court erred in denying his motion for continuance; 2) the
jury's finding that he was not unfit to proceed is against the great weight and preponderance of the evidence; 3) the juvenile
court erred in certifying him to stand trial as an adult; 4) the evidence is legally and factually insufficient to support his
conviction; 5) the trial court erred in admitting certain evidence and allowing certain testimony; and 6) the jury charge
failed to correctly instruct the jury regarding the law of parties. We affirm. 

We will address the points in the approximate order in which they are raised. Review of the facts in the light most favorable
to the verdict is necessary. See Emery v. State, 881 S.W.2d 702, 704 (Tex. Crim. App. 1994). 

Background 


On the evening of January 20, 1998, Susan Malek was asleep in the bedroom of her mobile home in Bay City, Texas. Her
two children, an eight-year-old daughter, Ashley, and a six-year-old son, Zachary, were asleep in the bed with her. Ashley
testified she woke up because her mother was sitting up in bed, screaming, "Oh, God, help me please." Ashley saw two
men, later identified as Jimenez and his brother, Kenneth Parr, (3) standing in the bedroom doorway. One of the men had a
gun. Ashley testified that one of the men was tall and the other short; each wore a bandana mask. Ashley could tell by the
way the men talked that they were black. She testified the men called each other "bro" and "cuz." The men ordered Malek
and the children to lie face down on the floor. They asked Malek if there were any guns in the house; she said no. Ashley
testified the men called Malek "bad names," including "bitch." She could hear the men going through her mother's musical
jewelry box and loose change. At one point, Ashley testified the gun was up against her back. Malek begged the men not
to hurt Ashley. One of the men told Malek to "spread [her] legs." Ashley heard her mother say, "No, no, not in front of my
kids." Malek was sexually assaulted. (4) Ashley testified she heard two gunshots and knew her mother had been shot. The
men left the bedroom, but returned a few minutes later and asked Ashley where the car keys were. She told them. She
heard them trying to start the car. A few minutes later, one of the men came back to the bedroom and asked Ashley how to
start the car. She told him, "[y]ou have to push the clutch thing in." After ten to twenty minutes had passed, Ashley got up
and called her grandmother, Charlotte Brown. Charlotte's husband, Mike Brown, answered the phone. Ashley told him
they had been robbed and that her mother had been shot. Mike and Charlotte arrived about ten minutes later. The house
was in disarray; the television, VCR, and the children's Sega Saturn game were missing. The children came running out of
Malek's bedroom. Charlotte and Mike entered the bedroom and found Malek dead, lying face-down on the floor, nude
from the waist down.

A jury found Jimenez was not unfit to proceed as a result of mental illness or retardation. (5) Following a certification
hearing, the trial court certified Jimenez to stand trial as an adult and transferred the case to regular criminal court. (6) A
jury convicted Jimenez of capital murder and he was automatically sentenced to life imprisonment. 

Continuance


In his first point of error, Jimenez contends the trial court erred in denying his motion for continuance of the
fitness-to-proceed hearing. Jimenez contends a continuance was necessary in order to obtain information necessary to
make an objective determination regarding his competence. More specifically, he contends Dr. Theodore Pearlman, a
psychiatrist and the defense expert, testified that testing regarding Klinefelter's syndrome (7)was necessary to determine
causation relating to issues surrounding competency. Jimenez also argues that the trial court abused its discretion in
denying the motion for continuance because there was no evidence that the State opposed the motion. 

The State argues it did not agree to Jimenez's motion for continuance. It further argues that even if there was an agreement,
it was nonetheless within the trial court's discretion to deny the continuance. The State argues that no testimony was
offered that additional testing would definitely have provided critical information; Dr. Pearlman testified only that such
testing may have been helpful in determining causation for Jimenez's alleged inability to proceed. The State also argues
that because obtaining the test results would have taken only a few weeks, there was ample time for Jimenez to develop a
record of proof and that his failure to do so waives any error on this point. 

The granting of a motion for continuance is within the discretion of the trial court. See Tex. Code Crim. Proc. art. 29.03
(Vernon 1989); Cooks v. State, 844 S.W.2d 697, 725 (Tex. Crim. App. 1992); Hooks v. State, 44 S.W.3d 607, 615 (Tex.
App.-Texarkana 2001, no pet.). Here, the record reflects that at the hearing on the motion for continuance, Dr. Pearlman
testified that the issue of Jimenez's lack of competence is separate from the issue of any diagnosis of Jimenez as having
Klinefelter's syndrome. He also testified it is "absolutely" possible to make a determination regarding competence
regardless of whether the tests for Klinefelter's syndrome were conducted. Accordingly, we hold the trial court did not
abuse its discretion in denying Jimenez's motion for continuance. We overrule his first point of error.

Fitness to Proceed


In his second point of error, Jimenez challenges the factual sufficiency of the jury's finding that he was fit to proceed. He
contends the jury's finding is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly
wrong and manifestly unjust. The State contends Jimenez points only to evidence favorable to his position and ignores all
contrary evidence. The State argues the record contains sufficient evidence to support the jury's finding. 

In determining whether the evidence is sufficient to support a finding, an appellate court must consider and weigh all the
evidence. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In the Matter of J.P.O., 904 S.W.2d 695, 700 (Tex.
App.-Corpus Christi 1995, writ denied); In the Matter of K.D.S., 808 S.W.2d 299, 302 (Tex. App.-Houston [1st Dist.]
1991, no writ). Only if the finding is so against the great weight and preponderance of the evidence as to be manifestly
unjust may we set the finding aside. Cain, 709 S.W.2d at 176; J.P.O., 904 S.W.2d at 700; K.D.S., 808 S.W.2d at 302. 

An appellant has a duty to show that the record supports his contentions and to point to the supporting places in the record. 
See Tex. R. App. P. 38.1(h); Hall v. Stephenson, 919 S.W.2d 454, 466 (Tex. App.-Fort Worth 1996, writ denied). It is not
the duty of an appellate court to make an independent search of the record. Pratt v. State, 907 S.W.2d 38, 47 (Tex.
App.-Dallas 1995, writ denied) (citing Fredonia State Bank v. General Am. Life Ins. Co., 881 S.W.2d 279, 283 (Tex.
1994)).

Jimenez asserts that all three doctors who testified at his fitness hearing agreed that he suffered from an extreme behavioral
disorder and that he is borderline mentally retarded. However, he provides no citations to the record in support of his
contentions. The record reflects that Dr. Pearlman testified that in his opinion, Jimenez was not fit to proceed. Dr.
Pearlman conceded, however, that some of Jimenez's conversations with other physicians and probation officers indicated
that he had some understanding of the proceedings and some ability to assist and interact with authority figures. Dr. Milton
Williams, a psychiatrist, testified that Jimenez was fit to proceed. Similarly, Dr. W. K. Joe, a psychologist, testified that in
his opinion, Jimenez was fit to proceed and capable of assisting in his own defense.

The test for fitness to proceed is established in section 55.31 of the family code and provides, in pertinent part, that "[a]
child . . . who as a result of mental illness or mental retardation lacks capacity to understand the proceedings in juvenile
court or to assist in the child's own defense is unfit to proceed . . ." Tex. Fam. Code Ann. § 55.31(a) (Vernon Supp. 2002).
(8) Unfitness to proceed as a result of mental illness or mental retardation must be proved by a preponderance of the
evidence. Tex. Fam. Code Ann. § 55.32(d) (Vernon Supp. 2002). It is within the province of the jury to weigh opinion
evidence and the judgment of experts and decide which expert witness should be credited. Pratt, 907 S.W.2d at 47. We
have reviewed the record and conclude that the jury's finding that Jimenez was fit to proceed was not so contrary to
overwhelming weight of the evidence that it was clearly wrong and manifestly unjust. We overrule point of error two. 

Transfer

 

1) Ineffective assistance 

In his third point of error, Jimenez challenges his transfer to criminal district court for adult prosecution. Specifically, he
contends he was denied effective assistance of counsel at the certification hearing because he did not receive "notice
regarding the sexual assault of the victim." The State responds that even if Jimenez's attorney did not know the State would
refer to the sexual assault evidence at the certification hearing, Jimenez cannot show that he suffered any harm because
even without the sexual assault evidence, the evidence of Jimenez's participation in the burglary and/or murder was
sufficient to warrant certification. 

We examine claims of ineffective assistance of counsel under the standard set out in Strickland v. Washington, 466 U.S.
668, 687 (1984). To prevail on such a claim, an appellant must first show his attorney's representation fell below an
objective standard of reasonableness. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994);Hernandez v.
State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The appellant must then show a reasonable probability that a different
outcome would have resulted but for his attorney's unprofessional errors. Jackson, 877 S.W.2d at 771; Hernandez, 726
S.W.2d at 55. A reasonable probability is one sufficient to undermine confidence in the outcome. Jackson, 877 S.W.2d at
771; Hernandez, 726 S.W.2d at 55. 

Although Jimenez asserts he was denied effective assistance of counsel because his attorney had no notice that the State
would refer to the sexual assault during the certification hearing, he cites no authority in support of his contention. 
Accordingly, he has waived any complaint on this point. See Tex. R. App. P. 38.1(h).

Moreover, a juvenile court can transfer a case to criminal court if it determines there is probable cause to believe the
juvenile committed the alleged offense and that either the seriousness of the crime or the child's background requires
criminal prosecution. See Tex. Fam. Code Ann. § 54.02(a)(3) (Vernon Supp. 2002). (9) Jimenez acknowledges that the
State's burglary allegations met all the requirements of section 54.02 of the family code. Therefore, even if Jimenez's
attorney lacked notice that the State would refer to the sexual assault at the certification hearing, Jimenez cannot show he
suffered harm because the burglary allegations alone were sufficient to warrant certification. See Tex. R. App. P. 44.1. 
Jimenez cannot show a reasonable probability that but for his counsel's allegedly deficient performance, the result of the
proceeding would have been different. See Jackson, 877 S.W.2d at 771. We conclude he was not deprived of effective
assistance of counsel. We overrule the third point of error. 

2) Sufficiency of Evidence Supporting Certification 

In his fifth, seventh, and eighth points of error, Jimenez challenges the sufficiency of the evidence supporting the trial
court's order certifying him to stand trial as an adult. Specifically, in his fifth point, he contends the trial court erred in
finding the State met its burden of probable cause for certification as an adult. In his seventh and eighth points, he
challenges the factual and legal sufficiency of the evidence supporting his transfer to criminal court. We will address these
points together. 

In order to properly transfer a matter to a district court, a juvenile court must find two things. First, the court must find
probable cause to believe the juvenile committed the offense or offenses alleged in the transfer petition. Second, the
juvenile court must find that the welfare of the community requires criminal proceedings because of the seriousness of the
offense alleged or because of the background of the juvenile. See Tex. Fam. Code Ann. § 54.02(a) (Vernon Supp. 2002);
In the Matter of D. D., 938 S.W.2d 172, 174-75 (Tex. App.-Fort Worth 1996, no pet.).

An appeal of a discretionary transfer order is a criminal matter governed by the code of criminal procedure and the rules of
appellate procedure applicable to criminal cases. Tex. Code Crim. Proc. Ann. art. 44.47(c) (Vernon Supp. 2002). 
Accordingly, the legal and factual sufficiency review applicable to criminal cases is applicable to our review of the juvenile
court's transfer order. 

When the legal sufficiency of the evidence supporting a transfer order is challenged, we view the evidence in the light most
favorable to the trial court's findings to determine whether the trial court could have found probable cause that a crime was
committed and that, because of the seriousness of the alleged offense or the background of the child, the welfare of the
community requires criminal proceedings. See Tex. Fam. Code Ann. § 54.02(a)(3) (Vernon Supp. 2002); Jackson v.
Virginia, 443 U.S. 307, 318-19 (1979);Johnson v. State, 23 S.W.3d 1, 7 (Tex. 2000). 

When the factual sufficiency of a transfer is challenged, the reviewing court must consider all of the evidence to determine
if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. See
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); In re D. D., 938 S.W.2d at 174. 

Absent an abuse of discretion, an appellate court will not disturb a juvenile court's decision to certify a juvenile as an adult,
waive jurisdiction, and transfer the juvenile to adult court. In the Matter of N.M.P., 969 S.W.2d 95, 98 (Tex.
App.-Amarillo 1998, no pet.); D. D., 938 S.W.2d at 175; In the Matter of J.P.O., 904 S.W.2d 695, 698 (Tex. App.-Corpus
Christi 1995, writ denied). We will uphold the trial court's findings unless we find the evidence too weak to support the
findings, or the findings are so against the overwhelming weight of the evidence that they are manifestly unjust. Matter of
C.C., 930 S.W.2d 929, 930 (Tex. App.-Austin 1996, no pet.); Matter of M.A., 935 S.W.2d 891, 895-96 (Tex. App.-San
Antonio 1996, no writ). 

Under section 54.02 of the family code, before certifying a juvenile as an adult, the juvenile court must determine whether
probable cause exists to believe the child committed the offenses alleged in the transfer petition. See Tex. Fam. Code Ann.
§ 54.02(a)(3) (Vernon Supp. 2002). Probable cause is shown by facts and circumstances sufficient to warrant a prudent
person to believe the child committed the offense. In the Matter of D.I.N., 930 S.W.2d 253, 255 (Tex. App.-Houston [14th
Dist.] 1996, no writ); In the Matter of J.P.O., 904 S.W.2d 695, 700 (Tex. App.-Corpus Christi 1995, writ denied). The
probable cause standard of proof embraces a practical, common sense approach rather than the more technical standards
applied in the burdens of proof of either beyond a reasonable doubt or a preponderance of the evidence. J.P.O., 904
S.W.2d at 700. 

In making the determination required by section 54.02, the trial court shall consider, among other matters: 

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses
against the person;

 (2) the sophistication and maturity of the child; 

(3) the record and previous history of the child; and 

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of
procedures, services, and facilities currently available to the juvenile court.

 Tex. Fam. Code Ann. § 54.02(f) (Vernon Supp. 2002).



While the trial court must consider all of these factors before transferring the case to district court, it is not required to find
that each factor is established by the evidence. In re D. D., 938 S.W.2d at 176; J.P.O., 904 S.W.2d at 703 (Butts, J.,
concurring). The trial court is not required to give each factor equal weight so long as each is considered. In re J.J., 916
S.W.2d 532, 535 (Tex. App.-Dallas 1995, no writ). 

We first address Jimenez's contention that the State failed to meet its burden of showing probable cause to believe he
committed the alleged offenses. More specifically, he contends that "[t]he only evidence of a crime committed by Jimenez
was that he may have been connected to a burglary." 

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct
of another for which he is criminally responsible, or by both. Tex. Pen. Code Ann. § 7.01(a) (Vernon 1994); (10)

Rosillo v. State,953 S.W.2d 808, 812 (Tex. App.-Corpus Christi 1997, pet. ref'd). 

The evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the
commission of the offense and encourages the commission of the offense either by words or other agreement. Ransom v.
State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); Rosillo, 953 S.W.2d at 814. The evidence must show that, at the time
of the offense, the parties were acting together, each contributing to their common purpose. See Burdine v. State, 719
S.W.2d 309, 315 (Tex. Crim. App. 1986). In determining whether a defendant participated in an offense as a party, the
court may examine the events occurring before, during, and after the commission of the offense, and may rely on actions of
the defendant that show an understanding and common design to commit the offense. Ransom, 920 S.W.2d at 302; 
Rosillo, 953 S.W.2d at 814. Participation in an enterprise may be inferred from the circumstances and need not be shown
by direct evidence. Rosillo, 953 S.W.2d at 814. Circumstantial evidence may be sufficient to show that one is a party to
the offense. Id.

At the hearing on the motion for discretionary transfer, the State presented evidence that Jimenez is relatively sophisticated,
knowledgeable about the legal system, manipulative, and "streetwise." Dr. Williams testified that Jimenez's history
regarding his assignment to various rehabilitative facilities was "pretty bleak." Marc Bittner, a juvenile probation officer,
testified that Jimenez's juvenile referral record included two felonies and eight misdemeanors. Bittner also testified that
Jimenez was not likely to be rehabilitated by utilizing any of the available services because he had been assigned to various
programs and had never successfully completed any of them. Bittner further testified that the public would not be
adequately protected by maintaining Jimenez in the juvenile system. Tommy Lytle, a police officer, testified that
according to Jimenez's girlfriend, Jimenez admitted he participated in the burglary and knew Malek had been shot. The
officer also testified that the stolen property had been recovered from an apartment where Jimenez and Parr often spent the
night and that eyewitnesses had observed Jimenez carrying the stolen property. Conflicting evidence was presented as to
whether Jimenez told his girlfriend that he was present when Malek was shot. 

The trial judge appropriately considered the factors set forth in subsections (a) and (f) of section 54.02, and made the
following findings of fact: 

Jimenez was at least 15 years of age at the time of the offense;

no adjudication hearing had been conducted concerning the offenses;

 the offense involved injury and death to a person;

 probable cause existed to believe that Jimenez committed the offenses;

evidence existed upon which the grand jury of Matagorda County, Texas would probably return an indictment against
Jimenez if the district attorney so requested;

Jimenez was sufficiently sophisticated and mature to assist his attorney in his defense;

the offense was committed in an aggressive and premeditated manner;

there was no likelihood of the reasonable rehabilitation of Jimenez through procedures, services, and facilities currently
available to the juvenile court; and 

because of the nature of the offenses, the welfare of the community required criminal proceedings. 

Viewing the evidence in the light most favorable to the prosecution, we conclude the trial court did not abuse its discretion
in finding probable cause existed to believe appellant committed the alleged offenses. We overrule Jimenez's fifth point of
error.

In his seventh point, Jimenez argues the evidence is factually insufficient to support the following findings: 1) that he
probably committed the offenses of murder and sexual assault; 2) that he was sophisticated or mature enough; 3) that the
offense was committed in a premeditated manner; 4) that he could not have been rehabilitated by the use of procedures and
services; and 5) that the welfare of the community is best served by trying him as an adult. In his eighth point, he
challenges the legal sufficiency of the evidence supporting the same findings.

Jimenez does not challenge the sufficiency of the evidence linking him to the offense of burglary. This Court has noted
that a "burglary of a home in the middle of the night while the residents are at home asleep is a serious offense." J.P.O.,
904 S.W.2d at 702. With regard to the offenses of murder and sexual assault, a juvenile court may make the certification
finding of probable cause based on the law of parties; a showing of personal commission of the offense by the respondent is
not required. See In the Matter of A.A., 929 S.W.2d 649, 655 (Tex. App.-San Antonio 1996, no writ).

The trial court is not required to make an affirmative finding on each of the section 54.02(f) factors. In the Matter of M.A.,
935 S.W.2d 891, 896 (Tex. App.-San Antonio 1996, no writ). We have already determined that the trial court did not err in
finding the first component required by section 54.02(a)(3): that there was probable cause to believe Jimenez committed the
alleged offenses. See Tex. Fam. Code Ann. § 54.02(a)(3) (Vernon Supp. 2002). The second component of subsection
(a)(3) requires only a finding that either the seriousness of the offense or the background of the child requires criminal
prosecution to protect the welfare of the community. Id. A trial court does not abuse its discretion by finding the
community's welfare required transfer due to the seriousness of the crime alone, despite the child's background. See D.D.,
938 S.W.2d at 177; Matter of M.A., 935 S.W.2d at 895-97.

Here, the trial court stated that its decision to waive jurisdiction was based, inter alia, on the following findings: that there
is probable cause to believe Jimenez committed the offense of capital murder, a serious offense involving injury and death
to a person; that Jimenez is sufficiently sophisticated and mature to understand adult criminal proceedings; that he is
mature enough to assist in the preparation of his defense; that Jimenez has had numerous prior dealings with the juvenile
system; that there are no prospects of adequate protection of the public; and that there is no likelihood of rehabilitation by
utilization of available facilities. 

After reviewing all the evidence, we conclude that the evidence supports the trial court's findings. We hold that the order
waiving jurisdiction and transferring the cause to the district court for criminal proceedings is not so against the great
weight and preponderance of the evidence as to be manifestly erroneous or unjust. See Clewis, 922 S.W.2d at 135. We
hold the evidence is legally and factually sufficient to support the juvenile court's order. The court did not abuse its
discretion in ordering the transfer to the district court. Jimenez's seventh and eighth points are overruled. 

3) Sexual Assault Testimony

In his fourth point of error, Jimenez argues the trial court erred in overruling his

relevance objection to the admittance of testimony regarding the sexual assault of Malek. Although Jimenez fails to
specifically state that his complaint refers to testimony admitted at the certification hearing, he argues that "[a]ny evidence
offered of a sexual assault was more prejudicial to the determination of whether to waive the juvenile court's jurisdiction."
Accordingly, we read this point as referring to the admittance of testimony regarding the sexual assault at the certification
hearing.

Jimenez has failed to provide any references to the record in support of this point. He has therefore waived any error. See
Tex. R. App. P. 38.1(h). The record also reflects that although Jimenez objected on the basis of lack of notice to testimony
by Officer Susan Maxwell regarding the sexual assault of Malek, he failed to timely object on the basis of lack of notice to
similar testimony offered by Officer Tommy Lytle regarding the sexual assault. An objection to allegedly inadmissible
evidence should be made at the earliest opportunity, or as soon as the ground of objection becomes apparent. Johnson v.
State, 803 S.W.2d 272, 291 (Tex. Crim. App. 1990), overruled on other grounds by Heitman v. State, 815 S.W.2d 681
(Tex. Crim. App. 1991). One must object every time allegedly inadmissible evidence is offered or be in peril of waiving
the objection. Braughton v. State, 749 S.W.2d 528, 531 (Tex. App.-Corpus Christi 1988, pet. ref'd). 

Even if Jimenez had not waived any error, his argument is without merit. This Court has noted: 

No consistent rules regarding the admissibility of evidence have been developed for a transfer hearing, and juvenile courts
often consider evidence that would be inadmissable at an adjudication hearing. Strict rules of evidence are not applied in
transfer proceedings because the weight of the evidence is judged by whether it would support an indictment for the
offense, and, a grand jury, when considering an indictment, is permitted to receive evidence that would be inadmissable at
an adjudication hearing or trial.

J.P.O., 904 S.W.2d at 699 (citations omitted). We hold that the trial court did not err by allowing the testimony regarding
the sexual assault of Malek. We overrule Jimenez's fourth point.

4) Bittner's Testimony 

In his sixth point, Jimenez contends the juvenile court erred in admitting the testimony of Marc Bittner, a juvenile
probation officer, regarding the services and facilities available for Jimenez's rehabilitation. Jimenez argues that Bittner
was not qualified to testify because he did not investigate the available services and facilities. Jimenez also argues there
was no evidence to support the court's findings regarding available services.

As noted above, strict rules of evidence are not applicable in transfer proceedings. Id. The record reflects that: 1) Bittner
testified that he has been a probation officer for three years; 2) he is familiar with Jimenez's juvenile history and the
services available through the juvenile justice system; and 3) it is unlikely that Jimenez could be rehabilitated by utilizing
available services because he had previously been referred to a number of different types of programs and had never
successfully completed one. We hold the trial court did not err in admitting Bittner's testimony. We overrule Jimenez's
sixth point of error.

Trial


In points of error nine and ten, Jimenez complains that the trial court abused its discretion by admitting the expert
testimony of Ede Emerick, a DNA expert from the Texas Department of Public Safety Crime Lab, regarding DNA
evidence. More specifically, Jimenez contends the trial court erred by failing to make a specific finding regarding the
relevancy of the DNA evidence and by failing to exclude the DNA evidence on the ground that its prejudicial value
outweighed its probative value. See Tex. R. Evid. 403. He also contends the trial court erred by basing its finding of the
reliability of the DNA evidence on the testimony of one expert witness, Meaghan Clement, who testified at the
Daubert/Kelly hearing, (11) but not at trial, while admitting the evidence at trial through the testimony of Emerick, a different
expert witness. 

Jimenez admits that he failed to object to Emerick's testimony regarding DNA evidence or to the trial court's failure to
explicitly determine the relevancy of such evidence. Thus, he concedes that he failed to preserve error. Jimenez argues,
however, citingSkinner v. State, 956 S.W.2d 532, 544 (Tex. Crim. App. 1997), and Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985 (op. on reh'g)), that he is nonetheless entitled to reversal if the alleged error resulted in egregious
harm, i.e., harm so great that he was denied a fair and impartial trial. Jimenez argues he suffered egregious harm because:
1) the jury did not receive the DNA evidence from the qualified expert; and 2) no finding of relevance was made by the
trial court. 

We find Jimenez's reliance on the doctrine of "egregious harm," as outlined in Skinner and Almanza, is misplaced. In those
cases, the doctrine of "egregious harm" was applied to alleged jury charge error. See Skinner, 956 S.W.2d at 544; Almanza,
686 S.W.2d at 174. Here, Jimenez's challenge is to the admissibility of the DNA evidence and Emerick's testimony at trial
regarding the evidence. 

Emerick testified at trial, without objection, regarding the results of the DNA analysis. We hold Jimenez failed to preserve
any error regarding the admission of the DNA evidence. See Tex. R. Evid. 103 (a)(1); Tex. R. App. P. 33.1. We overrule
points of error nine and ten. 

In his eleventh point of error, Jimenez contends the trial court erred in admitting photographs of Malek's body into
evidence. Specifically, Jimenez challenges the admission of State's exhibits 4, 5, 6, and 7 on grounds that the probative
value of the photographs was substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403.

We review a trial court's decision under rule 403 under an abuse of discretion standard. Salazar v. State, 38 S.W.3d 141,
151 (Tex. Crim. App. 2001). We reverse a trial court's decision only if it lies outside the "zone of reasonable
disagreement." Id. Autopsy photographs are generally admissible, unless they depict mutilation of the victim caused by
the autopsy. Id. 

The court of criminal appeals has held that:

when performing a Rule 403 analysis, the trial court must consider "the host of factors affecting probativeness . . . and
balance those factors against the tendency, if any, that the photographs have to encourage resolution of material issues on
an inappropriate emotional basis." When determining the proclivity of pictures to spur emotional decision-making, the
court should examine the "number of exhibits offered, their gruesomeness, their detail, their size, whether they are black
and white or color, [and] whether they are close-up." Additionally, relevant criteria in determining whether the prejudicial
effect of a piece of evidence substantially outweighs the probative value include the fact "that the ultimate issue was not
seriously contested by the opponent; that the State had other convincing evidence to establish the ultimate issue to which
the [evidence] was relevant; that the probative value of the . . . evidence was not, either alone or in combination with other
evidence particularly compelling; that the [evidence] was of such a nature that a jury instruction to disregard it for any but
its proffered purpose would not likely be efficacious." The trial court should also, if applicable, consider "the fact that the
body has been altered since the crime in some way (e.g., by autopsy) that might enhance its gruesomeness to the defendant's
detriment.



Id. at 152 (citations omitted).

Here, State's exhibits 4, 5, 6, and 7 are color photographs of Malek's body taken during an autopsy performed by Dr.
Tommy Brown, a medical examiner for Harris County. As they appear in the record before us, the photographs measure
approximately three and a half inches by four and a half inches. (12) Exhibit number four is a photograph of Malek's upper
body in the condition in which it was brought to the medical examiner's office. Malek's body is clad in a blood-stained
T-shirt; her face is covered in blood. Exhibits five, six, and seven are close-up photographs of Malek's face and neck area,
taken from different angles. Dr. Brown testified that exhibits five, six, and seven were taken after the body was cleaned
and that the photographs generally depict abrasions and contusions to Malek's face and head. Dr. Brown described the
injuries, testifying that they were recent and consistent with blunt force trauma. He also testified that some of the abrasions
were consistent with injuries caused by carpet burn. 

The photographs are highly probative to show the violent manner of Malek's death. The photographs depict injuries that
show Malek struggled before she was murdered and are consistent with the children's account of events. The photographs
do not depict any mutilation caused by the autopsy. Although exhibit four is more gruesome than the others in that it
shows Malek's blood-covered face, it accurately reflects the extent of her injuries and does not appear to be calculated to
inflame the jury. We cannot say that the trial court abused its discretion by deciding that the probative value of the
photographs was not substantially outweighed by the danger of unfair prejudice. We overrule Jimenez's eleventh point of
error.

In his twelfth and thirteenth points of error, Jimenez contends the trial court erred in admitting certain statements by Maria
Cervantes, including that Jimenez told her that he and Parr tried to kill Malek's children but failed because the gun jammed. 
Jimenez argues he was entitled to receive notice of the State's plans to introduce Cervantes's testimony because her
statements alleged an extraneous offense. Jimenez also argues Cervantes's testimony should have been excluded because
its probative value was substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403.

Texas Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts for the purpose of
proving the character of the defendant in order to show that he acted in conformity with that character on the occasion in
question. See Tex. R. Evid. 404(b); Santellan v. State, 939 S.W.2d 155, 168 (Tex. Crim. App. 1997). The rule also lists
exceptions, which allow the admission of extraneous offense evidence in order to show proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Tex. R. Evid. 404(b); Santellan, 939
S.W.2d at 168. In addition, evidence of offenses committed in the same transactional context as the indicted offense is
admissible. Santellan, 939 S.W.2d at 167-68 (citing Camacho v. State,864 S.W.2d 524, 532 (Tex. Crim. App. 1993)). In
Camacho, the court of criminal appeals defined "same transaction contextual evidence" as "evidence [which] imparts to the
trier of fact information essential to understanding the context and circumstances of events which, although legally separate
offenses, are blended or interwoven." Camacho, 864 S.W.2d at 532. Such evidence is "admissible, not for the purpose of
showing character conformity, but to illuminate the nature of the crime alleged." Id. The State is entitled to admit evidence
to show the context in which a criminal act occurred; events do not occur in a vacuum and the jury should be allowed to
hear what happened immediately before and after the act so they may realistically evaluate the evidence. Ford v. State, 26
S.W.3d 669, 675 (Tex. App.-Corpus Christi 2000, no pet.). 

Here, the record reveals that the State argued to the trial court that the statement did not constitute an extraneous offense,
but was offered to show Jimenez's state of mind and intent with regard to the charged offense. The State also argued that
the statement was "part and parcel of the offense committed." The trial court found that the statement did constitute an
extraneous offense, but that no notice was required because it was part of "the same transaction." On appeal, the State
argues by cross point that the trial court erred in determining that the statement was an extraneous offense. Alternatively,
the State argues that if it was an extraneous offense, it was admissible as part of the same transaction. 

A trial court's admission of extraneous offense testimony is reviewed under an abuse of discretion standard. See Santellan,
939 S.W.2d at 168-69; Wilks v. State, 983 S.W.2d 863, 866 (Tex. App.-Corpus Christi 1998, no pet.). The decision to
admit such evidence will be upheld so long as the trial court properly admitted the evidence in light of the applicable
standards and its decision lies within the zone of reasonable disagreement. Rankin v. State, 974 S.W.2d 707, 718 (Tex.
Crim. App. 1996). The trial court's determination of admissibility under rule 403 must be reasonable in view of all
relevant facts. See Rachal v. State, 917 S.W.2d 799, 808 (Tex. Crim. App. 1996). Even when the trial judge does not
specify a reason on matters of admissibility, the decision will be upheld if it is correct on any theory of law. Santellan, 939
S.W.2d at 168 n.19.

We hold the trial court did not abuse its discretion in admitting the evidence. We overrule Jimenez's twelfth and thirteenth
points of error. Because we have determined the evidence was properly admitted, we do not address the State's cross point. 
See Tex. R. App. P. 47.1.

In his fourteenth and fifteenth points, Jimenez contends the trial court erred in admitting evidence of the out-of-court photo
lineup because it was impermissibly suggestive and as a result, the subsequent in-court identification of Jimenez by Tecia
Jackson, a resident at the apartment complex across the street from Malek's mobile home, was tainted by the improper
procedure. The State argues the photo lineup was not so impermissibly suggestive as to cause a substantial likelihood of
misidentification and that even if it was, Jimenez nonetheless failed to show that the allegedly suggestive lineup tainted
Jackson's in-court identification of him.

An in-court identification is inadmissible when the defendant proves, by clear and convincing evidence, that it has been
tainted by an impermissibly-suggestive pretrial photographic identification. Ibarra v. State, 11 S.W.3d 189, 195 (Tex.
Crim. App. 1999). In determining admissibility, the trial court looks to the totality of circumstances surrounding the
photographic lineup to determine if they show a procedure so impermissibly suggestive as to give rise to a very substantial
likelihood of irreparable misidentification. Id. Reliability is the linchpin in determining the admissibility of an
identification. Id. In assessing reliability under the totality of the circumstances, the following five non-exclusive Biggers
factors (13) should be considered de novo by the reviewing court and weighed against the corrupting effect of any suggestive
identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's
degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty
demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Id. at
195-96 (citing Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998)). An in-court identification is admissible if
the ability to identify has an origin independent from the pretrial procedure. Zepeda v. State, 797 S.W.2d 258, 260 (Tex.
App.-Corpus Christi 1990, pet. ref'd). 

We have reviewed State's exhibit number 199, the photographic lineup shown to Tecia Jackson. The lineup contains
photographs of head shots of six African-American males. All of the men appear to be of comparable age. Two of the six
are lighter-skinned than the other four. Prior to being shown the photo lineup, Jackson described the two men she saw
outside her window the night of the incident as young and either Hispanic or light-skinned African-Americans. A Bay City
police officer testified that when Jackson was shown the photographic lineup, she immediately picked out the photograph
of Jimenez. Even if we were to accept Jimenez's argument that the lineup is impermissibly suggestive because only two of
the men in the photographs are lighter-skinned African-Americans, we cannot say there was a substantial likelihood that the
lineup caused a misidentification. Jackson testified that on the night of the murder, she heard two gunshots around 1:00
a.m. Jackson was fully awake and had not been asleep. Ten or fifteen minutes later, she heard two men arguing and looked
out her window. She saw two Hispanic or light-skinned African-American men walking across the grass carrying a
television set. One of the men was short; the other was tall and skinny. Jackson watched the men for approximately fifteen
minutes. She testified there were two lights in the area and that she was able to get a good look at the tall skinny man
because he was under the light and turned and looked in her direction. When Jackson first spoke with the police, she told
them that she had heard two men arguing, but because she was scared, she did not tell them that she had observed the men. 
About two days later, she again talked to the police and gave a statement as to what she had seen and heard. The next day,
Jackson was shown the photographic lineup and identified Jimenez as the tall skinny man. Jackson also made an in-court
identification of Jimenez as the tall skinny man.

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the photographic lineup was
not impermissibly suggestive. Even if it was, we conclude that no substantial risk of misidentification was created as to
deny Jimenez due process. See Ibarra, 11 S.W.3d at 195. We overrule Jimenez's fourteenth and fifteenth points.

In his sixteenth point of error, Jimenez challenges the admission of any fingerprint evidence because comparison
fingerprints were obtained without a warrant while he was in custody. In his seventeenth point, Jimenez contends the trial
court erred in admitting an enlargement of his fingerprints for demonstrative purposes. Jimenez argues the enlargement
should have been excluded because the State should have furnished him with a copy of the evidence in accordance with an
agreed pretrial order. 

In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination
of the historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's
credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). We afford the same amount of deference to the trial court's ruling on "application of law to fact
questions," also known as "mixed questions of law and fact," if resolving those ultimate questions turns on evaluating
credibility and demeanor. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. However, we review de novo questions of
law and "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. Ross, 32 S.W.3d
at 856; Guzman, 955 S.W.2d at 89. A review of a trial court's ruling on a motion to suppress presents an application of law
to a fact question. Maestas v. State, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999).

Diane Rieger, a Bay City police officer, testified that a fingerprint taken from Malek's jewelry box matched a set of
Jimenez's prints taken while he was in custody at the Cooke County Jail. The prints taken while he was in custody were
obtained by the supervisor of the jail section in accordance with routine jail protocol. We hold that no warrant was required
to obtain Jimenez's fingerprints while he was in custody. This Court has previously held that "relatively unintrusive
identification evidence, like fingerprints, line-ups, and handwriting exemplars, gathered without a warrant while a person is
in custody after arrest, does not violate the Fourth Amendment." Contreras v. State, 838 S.W.2d 594, 597 (Tex.
App.-Corpus Christi 1992, pet. ref'd) (citing Mulder v. State, 707 S.W.2d 908, 914 (Tex. Crim. App. 1986)). We hold the
trial court did not err in admitting the evidence of Jimenez's fingerprints. We overrule Jimenez's sixteenth point of error.

In his seventeenth point, Jimenez argues the trial court erred in admitting enlargements of previously-admitted exhibits of
Jimenez's fingerprints. The record reflects that the complained-of exhibits were photographic enlargements showing
particular areas of previously-admitted exhibits. Officer Rieger told the trial court that the enlargements would be helpful
in explaining her testimony to the jury. The trial court admitted the enlargements "for demonstrative purposes only." A
party should be allowed to make its case in the most persuasive manner possible by presenting evidence in a form which
enhances its effectiveness. See Alvarado v. State, 912 S.W.2d 199, 212 (Tex. Crim. App. 1995). We hold the trial court
did not abuse its discretion in admitting the enlargements. We overrule Jimenez's seventeenth point of error. 

In his eighteenth and nineteenth points, Jimenez challenges the legal and factual sufficiency of the evidence supporting his
conviction. More specifically, Jimenez contends that "the only direct evidence" linking him to Malek is his fingerprint,
which was found on her jewelry box. Jimenez argues that his fingerprints "might have been placed on [the jewelry box]
innocently subsequent to the commission of the crime."

When we review the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. at 318-19; Johnson, 23 S.W.3d at 7. The standard is the same for cases based on both
direct and circumstantial evidence. King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); Escobar v. State, 28
S.W.3d 767, 773 (Tex. App.-Corpus Christi 2000, pet. ref'd). We measure the legal sufficiency of the evidence by the
elements of the offense as defined by the hypothetically correct jury charge, which accurately sets out the law, is authorized
by the indictment, and does not unnecessarily increase the State's burden. Gollihar v. State, 46 S.W.3d 243, 253 (Tex.
Crim. App. 2001); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Escobar, 28 S.W.3d at 773. The jury, as
the sole judge of the credibility of the witnesses and the weight to be given their testimony, is free to accept or reject all or
any part of the testimony of any witness. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1981); Escobar, 28 S.W.3d at
773. Reconciliation of conflicts in the evidence is within the exclusive province of the jury. Jones v. State, 944 S.W.2d
642, 647 (Tex. Crim. App. 1996). 

In contrast, in reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a
neutral light, favoring neither party. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129 (Tex. Crim. App. 1996). 
Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is
against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, we must
determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt
is so obviously weak as to undermine confidence in the verdict, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Id. In performing this review, we are to give due deference to the fact finder's
determinations. Id. at 8-9; Clewis, 922 S.W.2d at 136. Consequently, we may find the evidence factually insufficient only
where necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.
Crim. App. 1997). These standards for review apply equally to direct and circumstantial evidence cases. Kutzner v. State,
994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

Jimenez was charged with capital murder. A person commits murder if he intentionally or knowingly causes the death of
an individual. Tex. Pen. Code Ann. § 19.02(b)(1) (Vernon 1994). A person commits capital murder if he intentionally
commits the murder in the course of committing or attempting to commit burglary or aggravated sexual assault. (14) Tex.
Pen. Code Ann. § 19.03(a)(2) (Vernon 1994). 

In the present case, the indictment, in four paragraphs, sets out the elements of the theories submitted to the jury: (1)
Jimenez (2) intentionally (3) caused the death of Malek, and (a) in the course of committing burglary of a habitation
(paragraph one); (b) in the course of committing aggravated sexual assault by assisting in the commission of the aggravated 
sexual assault of Malek by Parr by vaginal penetration, anal penetration, and oral penetration (respectively, paragraphs two,
three, and four). See Tex. Pen. Code Ann. §§ 19.03(a)(2); 22.021; 30.02 (a)(2) (Vernon 1994 and Supp. 2002). 

As noted, Jimenez specifically contends "there is no reliable evidence [connecting him] to the savage attack upon Malek." 
We now turn to an examination of the evidence.

At trial, Ashley testified that two African-American men, one tall and the other short, were involved in the burglary and
murder. Tecia Jackson also testified that after hearing gunshots, she looked out her window and saw two Hispanic or
light-skinned African-American men, one short and one tall, carrying a television set and arguing. At trial, Jackson
identified Jimenez as one of the men. 

Monica Silva, also a resident of the apartment complex and Parr's girlfriend, testified that when she returned home from
working as a cocktail waitress around 2:15 a.m., she found Jimenez and Parr in her apartment. A television set that she did
not recognize was on the floor. Jimenez, wearing socks on his hands, was sitting on the floor going through a pile of
jewelry. Silva also saw a jewelry box, which was later identified as Malek's. Jimenez's fingerprints were later found on the
jewelry box.

Gracie Martinez, another resident at the complex who lived in an apartment above Tecia Jackson, testified that she heard
two men arguing around midnight the night of the murder. She looked out her window and saw Parr and Jimenez arguing. 

Maria Cervantes, an acquaintance of Jimenez and Parr who also lived at the complex, testified that around 3:00 a.m. on
January 21st, Monica Silva and Jimenez knocked on her door. Silva told her Jimenez needed to spend the night on the
couch in Cervantes's apartment because he and Parr were fighting. After Silva left, Jimenez told Cervantes he did not want
to stay with Parr at Silva's apartment because Parr was "hot with the laws [sic]." According to Cervantes, Jimenez asked
her whether the yellow crime tape around Malek's trailer meant that someone was dead. The following morning, Jimenez
told Cervantes that he and Parr had killed Malek. He told her that he and Parr had planned to rob a store, but decided
instead to go to Malek's trailer and kick in the door. Cervantes testified that Jimenez said they were going to kill Malek's
children, but that the gun jammed. Jimenez also told her that he and Parr had each shot Malek once in the back of the head.

Erik Miller, an employee at the Gainesville State School at the time Jimenez was in custody there, testified he overheard
Jimenez tell someone in an adjacent cell that he had "killed that bitch." Voccia Calhoun, a caseworker who knew Jimenez,
testified that Jimenez had laughed and joked about how he had killed a woman. Vincent Hornsby, also employed by a state
agency, testified that Jimenez said he and his brother had killed the sheriff's daughter and that children were present when
the murder took place. Hornsby testified that Jimenez referred to Malek as "that bitch" and showed no signs of remorse
concerning the murder. 

We find that based on this evidence, a rational trier of fact could have found the essential elements of a capital murder to
convict Jimenez beyond a reasonable doubt. See Johnson, 23 S.W.3d at 7. After considering all the evidence neutrally, we
find that the verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See
id. at 11. We hold that the evidence is legally and factually sufficient to support the conviction, and we overrule Jimenez's
eighteenth and nineteenth points of error. 

In points of error twenty through twenty-three, Jimenez alleges error in the trial court's jury charge. Specifically, Jimenez
complains that: (1) the law of parties was not included in paragraph 11(B) of the charge, which he refers to as the
"application paragraph;" (2) the charge did not track the indictment; and (3) the trial court erred in denying his request for
an instruction on the defense of "independent impulse."

The function of the jury charge is to instruct the jury on the law applicable to the case. Dinkins v. State, 894 S.W.2d 330,
338 (Tex. Crim. App. 1995); Escobar, 28 S.W.3d at 778. When we review whether there has been error in a jury charge,
we apply an Almanza analysis to determine (1) whether error actually exists in the charge, and (2) whether any resulting
harm requires reversal. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Almanza, 686 S.W.2d at 171;
Escobar, 28 S.W.3d at 778.

We first address Jimenez's argument that the trial court erred in denying his request for an "independent impulse"
instruction. "'Independent impulse' embraces the theory that the accused, although admittedly intent on some wrongful
conduct, did not contemplate the extent of criminal conduct actually engaged in by his fellow conspirators, and thus cannot
be held vicariously responsible for their conduct." Fincher v. State, 980 S.W.2d 886, 888 (Tex. App.-Fort Worth 1998, pet.
ref'd) (citing Mayfield v. State, 716 S.W.2d 509, 513 (Tex. Crim. App. 1986)). "Independent impulse" operates as a
defense to the State's theory of accomplice liability. Id.

As noted, section 7.02 of the penal code provides: 

(a) A person is criminally responsible for an offense committed by the conduct of another if: . . .

 (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts
to aid the other person to commit the offense. . . 

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators,
all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying
out of the conspiracy.

Tex. Pen. Code Ann. § 7.02 (a)(2), (b) (Vernon 1994) (emphasis added).

The court of criminal appeals has held that where the evidence raises a question as to whether the offense committed was in
furtherance of the object offense, or was one that the accused should have anticipated, a requested instruction on
"independent impulse" should be submitted to the jury. See Mayfield, 716 S.W.2d at 515. However, "when a refused
charge [instruction] is adequately covered by the charge given, no harm is shown." Fincher, 980 S.W.2d at 888; see also
Davis v. State, 651 S.W.2d 787, 792 (Tex. Crim. App. 1983).

An instruction tracking section 7.02(a)(2) of the penal code is sufficient to present the issue of independent impulse to the
jury. See Davis, 651 S.W.2d at 792; Sarver v. State, 24 S.W.3d 448, 454-55 (Tex. App.-Texarkana 2000, pet. ref'd);
Chavez v. State, 6 S.W.3d 66, 72 (Tex. App.-San Antonio 1999, pet. ref'd); Fincher, 980 S.W.2d at 888. Here, the jury
instruction tracked the language of section 7.02(a)(2). (15) Consequently, the refused instruction was adequately covered in
the charge given, and no harm is shown. Davis, 651 S.W.2d at 792.

Jimenez also complains that "the charge did not tract [sic] the indictment" and that the law of parties was not included in
paragraph 11(B), which he refers to as the "application paragraph" of the charge. Paragraph 11(B) states:

B. Not only that Michael Jimenez and Kenneth Parr (co-defendant), on the occasion in question, were engaged in the
commission of the felony offense of burglary or aggravated sexual assault of Linda Malek, as defined in this charge, but
also that during the commission of the burglary or aggravated sexual assault, if any, Kenneth Parr (co-defendant) did shoot
Linda Malek in the head, and Kenneth Parr (co-defendant) did then and there use a deadly weapon, to-wit: a firearm, with
the intention of thereby killing her. Unless you find from the evidence beyond a reasonable doubt that Kenneth Parr
(co-defendant), on said occasion, specifically intended to kill the said Linda Malek when he shot her, if he did shoot her,
you cannot convict Michael Jimenez of the offense of capital murder. 



In order to authorize a jury to convict an accused as a party to an offense, the court must apply its abstract charge to the
facts of the case in the application paragraph. See Campbell v. State, 910 S.W.2d 475, 479 (Tex. Crim. App. 1995). It is
error to instruct the jury abstractly on the law of parties and fail to apply the law in the application paragraph. See id. 
However, an abstract application of the law of parties is harmless error if the evidence supports conviction as a primary
actor. See Todd v. State, 601 S.W.2d 718, 721 (Tex. Crim. App. 1980).

In the case before us, although paragraph 11(B) does not incorporate the law of parties, the application paragraphs
immediately following paragraph 11 do incorporate such law. Although application paragraphs 12(A), (C), (D), and (E)
instruct the jury regarding findings that Jimenez acted as a principal in shooting Malek, application paragraphs 12(B) and
(F) apply the law of parties as follows: 

B. If you find from the evidence beyond a reasonable doubt that on or about the 21st day of January, 1998 in Matagorda
County, Texas, Kenneth Parr (co-defendant) did intentionally cause the death of Linda Malek by shooting her in the head
with a deadly weapon, to-wit: a firearm, while said Kenneth Parr (co-defendant) was then and there in the course of
committing the offense of burglary of a habitation of Linda Malek, who was the owner of said habitation, and that the
defendant, Michael Jimenez, with the intent to promote or assist the commission of the offense, if any, solicited,
encouraged, directed, aided or attempted to aid said Kenneth Parr (co-defendant) to commit the offense, if he did, then you
will find the defendant guilty of capital murder; or
* * * * * 


F. If you find from the evidence beyond a reasonable doubt that on or about the 21st day of January, 1998 in Matagorda
County, Texas, Kenneth Parr (co-defendant) did intentionally cause the death of Linda Malek by shooting her in the head
with a deadly weapon, to-wit: a firearm, while said Kenneth Parr (co-defendant) was then and there in the course of
committing the offense of aggravated sexual assault (as that term is defined above) of Linda Malek, and that the defendant,
Michael Jimenez, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed,
aided or attempted to aid said Kenneth Parr (co-defendant), to commit the offense, if he did, then you will find the
defendant guilty of capital murder. (Emphasis added). 

We hold that the court's charge adequately applied the law of parties to the facts of the case. See In re J.F., Jr., 948 S.W.2d
807, 812 (Tex. App.-San Antonio 1998, no pet.) (noting that application paragraph may refer to other portions of the
charge).

Jimenez also complains that the charge did not track the indictment. In four paragraphs, the indictment alleges that
Jimenez: (1) killed Malek while in the course of committing burglary; (2) killed Malek while in the course of committing
aggravated sexual assault by encouraging and aiding Parr's sexual assault of Malek by vaginal penetration; (3) killed Malek
while in the course of committing aggravated sexual assault by encouraging and aiding Parr's sexual assault of Malek by
anal penetration; and (4) killed Malek while in the course of committing aggravated sexual assault by encouraging and
aiding Parr's sexual assault of Malek by means of oral sex. 

It is clear that the indictment charged appellant as a primary actor with regard to the murder. There were no allegations
charging appellant as a party to the offense of murder. The State did not need to indict Jimenez as a party to capital murder
for burglary and/or aggravated sexual assault in order for the jury to convict him as a party to that offense. Jackson v. State,
898 S.W.2d 896, 898 (Tex. Crim. App. 1995), overruled on other grounds, Malik, 953 S.W.2d at 239. The law of parties
may be applied to a case even though no such allegation is contained in the indictment. Id.; Pesina v. State, 949 S.W.2d
374, 377 (Tex. App.-San Antonio 1997, no pet.). 

At trial, Jimenez's counsel argued that the "charge does not track the language in the indictment which is alternatively that
Michael Jimenez committed the offense of murder while committing burglary, that Michael Jimenez killed Linda Malek
while assisting Kenneth Parr in committing aggravated sexual assault by way or oral, anal, or vaginal penetration." We
disagree. Application paragraph 12(A) of the charge tracks paragraph one of the indictment (Jimenez killed Malek while
committing burglary); application paragraph 12(C) tracks paragraph two of the indictment (Jimenez killed Malek while
committing aggravated sexual assault by assisting Parr's vaginal penetration of Malek); application paragraph 12(D) tracks
paragraph three of the indictment (Jimenez killed Malek while committing aggravated sexual assault by assisting Parr's anal
penetration of Malek); and application paragraph 12(E) tracks paragraph four of the indictment (Jimenez killed Malek
while committing aggravated sexual assault by assisting Parr's oral penetration of Malek). We hold the trial court did not
err in overruling Jimenez's objections to the charge. We overrule points of error twenty through twenty-three.

The judgment of the trial court is AFFIRMED. 
 

LINDA REYNA YAÑEZ

Justice





Do not publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the

14th day of February, 2002.

1. Appellant was sixteen years old at the time of the offense. 

2. The State was statutorily prohibited from seeking the death penalty because of appellant's age. See Tex. Pen. Code Ann.
§ 8.07(c) (Vernon Supp. 2002). 

3. In a separate trial, a jury convicted Parr of capital murder and he was sentenced to death.

4. Charlotte Brown, Malek's mother, testified that Zachary told her, "One of them stuck his wee-wee in Mommy's mouth." 
Ashley testified she did not witness the assault, but heard one of the men say, "If you bite it, I will shoot you." DNA
analysis of vaginal, oral, and anal swabs from Malek's body were consistent with Parr's blood profile. The swabs revealed
the presence of sperm in all three locations consistent with samples taken from Parr. 

5. See Act of May 31, 1995, 74th Leg., R.S., ch. 262, § 47, 1995 Tex. Sess. Law Serv. 2545 (Vernon) (amended 1999)
(current version at Tex. Fam. Code Ann. §§ 55.31, 55.32 (Vernon Supp. 2002)). Because the 1999 amendments apply only
to conduct occurring on or after September 1, 1999, the applicable version is that which was in effect at the time the
conduct occurred. 

6. See Tex. Fam. Code Ann. § 54.02 (Vernon Supp. 2002). 

7. Klinefelter's syndrome is defined as an abnormal condition in a male, characterized by usually two X and one Y
chromosomes, infertility, and smallness of the testicles. Merriam-Webster's Collegiate Dictionary 645 (10th ed. 1996). 

8. Although the applicable version of the statute is that which was in effect prior to the 1999 amendments, the amendments
to paragraph (a) made no substantive changes. Thus, we cite to the current version of the statute. 

9. Although portions of section 54.02 were amended in 1999, subsection (a)(3) was unchanged. Thus, we cite to the
current version. 

10. Section 7.01 of the Texas Penal Code provides, in relevant part, as follows:

(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the
conduct of another for which he is criminally responsible, or by both. (b) Each party to an offense may be charged with
commission of the offense.

Tex. Pen. Code Ann. § 7.01 (a), (b) (Vernon 1994).


Section 7.02 provides: (a) A person is criminally responsible for an offense committed by the conduct of another if: . . . 
(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to
aid the other person to commit the offense. . . 

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators,
all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was
committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying
out of the conspiracy.

Tex. Pen. Code Ann. § 7.02 (a)(2), (b) (Vernon 1994).

11. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993); Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992). 

12. The record does not indicate the size of the photographs shown to the jury. Jimenez makes no argument that the
photographs were unfairly prejudicial because of their size. 

13. See Neil v. Biggers, 409 U.S. 188, 199 (1972). 

14. The elements of burglary of a habitation are found at Tex. Pen. Code Ann. §30.02 (a)(2) (Vernon Supp. 2002). The
elements of aggravated sexual assault are found at Tex. Pen. Code Ann. §22.021 (Vernon Supp. 2002).

15. The charge instructed the jury that:

All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is
criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or
assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Mere presence or knowledge alone will not constitute one a party to an offense.

In addition to including application paragraphs charging Jimenez as a principal, the charge included the following
application paragraphs:

B. If you find from the evidence beyond a reasonable doubt that on or about the 21st day of January, 1998 in Matagorda
County, Texas, Kenneth Parr (co-defendant) did intentionally cause the death of Linda Malek by shooting her in the head
with a deadly weapon, to-wit: a firearm, while said Kenneth Parr (co-defendant) was then and there in the course of
committing the offense of burglary of a habitation of Linda Malek, who was the owner of said habitation, and that the
defendant, Michael Jimenez, with the intent to promote or assist the commission of the offense, if any, solicited,
encouraged, directed, aided or attempted to aid said Kenneth Parr (co-defendant) to commit the offense, if he did, then you
will find the defendant guilty of capital murder; or

* * * * * 


F. If you find from the evidence beyond a reasonable doubt that on or about the 21st day of January, 1998 in Matagorda
County, Texas, Kenneth Parr (co-defendant) did intentionally cause the death of Linda Malek by shooting her in the head
with a deadly weapon, to-wit: a firearm, while said Kenneth Parr (co-defendant) was then and there in the course of
committing the offense of aggravated sexual assault (as that term is defined above) of Linda Malek, and that the defendant,
Michael Jimenez, with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed,
aided or attempted to aid said Kenneth Parr (co-defendant), to commit the offense, if he did, then you will find the
defendant guilty of capital murder.